Stephen C. Ruehmann (167533)
**LAW OFFICES OF STEPHEN C. RUEHMANN**
770 L Street, Suite 950
Sacramento, CA 95814
Tel (916) 449-3939/Fax (916) 449-3929
ruehmannlaw@yahoo.com

Marc A. Fisher, Esq. (47794)
**LAW OFFICES OF MARC A. FISHER**
9580 Oak Avenue Parkway, #15
Folsom, CA 95630
Tel (916) 988-8001/Fax (916) 988-8002
mfisher@cosentinolaw.com

Attorneys for Plaintiffss
ANILECH SHARMA and
PARMA SHARMA

FILED
DEC 21 2009
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

E-filing

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANILECH SHARMA and PARMA SHARMA, <br><br> Plaintiffss, <br><br> vs. <br><br> PROVIDENT FUNDING ASSOCIATES, L.P.; a California limited partnership; PREFERRED MORTGAGE, a California business entity, form unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; a California corporation; MAX DEFAULT SERVICES CORPORATION, a California corporation; and DOES 1-100, inclusive, <br><br> Defendants. | Case No.: **C09-05968 VRW** <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE PENDING PRELIMINARY INJUNCTION** <br><br> DATE: December 21, 2009 <br> TIME: TBA <br> DEPT: TBA <br> JUDGE: TBA |

ADR

## I. INTRODUCTION

This case involves predatory and abusive lending practices by a shadowy group of companies who have played an extraordinary role in the current foreclosure crisis gripping our community. Plaintiffs were two of millions who fell prey to the deceptive lending practices of outfits like PROVIDENT FUNDING ASSOCIATES, L.P. ("PROVIDENT") and PREFERRED MORTGAGE, who originated and supplied untold numbers of subprime loans to Wall Street, there to be securitized and resold on the secondary market in the form of bonds and real estate trust investments. This scheme was facilitated by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC ("MERS"), the electronic registry which, in its role as a straw man "nominee" for beneficiaries, allowed its members to trade and sell Notes and Deeds of Trust without complying with the cumbersome legal requisites of documenting and recording such transfers. The scheme is now completed as companies with no provable ownership interest in the Note or Deed of Trust (including the foreclosing trustee MAX DEFAULT SERVICES CORPORATION ("MAX DEFAULT")) proceed to foreclosure without meeting the basic pre-foreclosure requirements of California Law.

Defendants have unquestionably committed many acts in contravention of law and should not be allowed to complete their unlawful scheme by taking Plaintiffs' property without meeting the pre foreclosure requirements of the Civil Code and without proving they are the true beneficiaries or trustees of the Note and Deed of Trust. Moreover, Plaintiffs have rescinded their loan pursuant to 15 U.S.C. § 1635 and issued a qualified written request under 12 U.S.C. § 2605, et seq. and seek by this action to quiet title to the property, remedies which will be rendered ineffectual if Defendants are allowed to proceed with foreclosure.

Plaintiffs face the sale of their home at a Trustee's Sale presently scheduled for 12:30 P.M. on December 22, 2009, on the steps of the Alameda County Courthouse. Plaintiffs seek an order

restraining and enjoining Defendants from proceeding with the trustee's sale or taking other actions to foreclose until this matter can be resolved on the merits.

Real property is unique, and Plaintiffs' injury will be uncompensable in damages if Defendants are allowed to proceed. *Demarist v. QuickLoan Funding, Inc.*, 2009 WL 940377 at 9 (C.D. Cal. 2009); *Johnson v. U.S. Dept. of Agriculture*, 734 F.2d 774, 789 (11th Cir. 1984). Moving from one's home is a hardship for anybody.

In contrast, Defendants will suffer no hardship if the instant motion granted. They will retain whatever security interest they have in the property and will be able to seek liquidation of the assets protecting their interests if they prevail. Statistics show that Defendants are not even marketing the properties upon which they foreclose but rather are sitting on them so foreclosure gains Defendants nothing. Indeed, an unoccupied home is subject to damages and resulting loss, while an occupied home will be maintained and preserved. Because the balance of hardships tips heavily in Plaintiffs' favor, Plaintiffs need only establish a serious question going to the merits upon which Plaintiffs have a better than fair chance of prevailing. *Miller v. California Pacific Medical Center, Inc.*, 19 F.3d 449, 456 (9th Cir. 1994).

Here, Plaintiffs have alleged and can establish prima facie violations of law and at the very least have a fair chance of prevailing on the merits. Defendants are not only guilty of wrongful foreclosure and predatory lending, they have also committed fraud and violated a host of statutes. This case presents a prototypical situation in which injunctive relief is appropriate. This Court should exercise its authority under Rule 65 and enter the requested injunctive relief.

## II.     ARGUMENT

### A. The Standard for Preliminary Injunctive Relief

The standard for granting a preliminary injunction requires balancing Plaintiffs' likelihood of success on the merits against the relative hardships to the parties. *Benda v. Grand*

*Lodge Int'l Assoc. Machinest*, 584 F.2d 308, 315 (9th Cir. 1978). This balancing is a continuum, wherein the required showing of irreparable harm varies inversely with the probability of success. *LGS Architects, Inc. v. Concordia Homes*, 434 F.3d 1150, 1155 (9th Cir. 2006); *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005). Here the balance of hardships tips sharply in support of Plaintiffs: They will lose their home if an injunction does not issue. In contrast, Defendants will suffer no serious hardship as their security in the home will remain (*Demarest v. Quick Loan Funding, Inc.*, 2009 WL 940377 at 9 (C.D. Cal.2009)), and it seems likely they will not immediately sell the property even if they do foreclose.

Because the balance of hardships tips sharply in their favor, Plaintiffs need only establish a serious question going to the merits and a fair chance they will prevail. *Miller, supra*, at 456; *see also Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999) ("the greater the relative hardship on the moving party, the less probability of success must be shown").

**B. Plaintiffs Will Prevail on the Merits; At the Least They Raise Serious Questions Going to the Merits.**

**1. Defendants Failed to Comply with Civil Code §§ 2923.5 and 2924**

**Civil Code 2923.5 absolutely precludes** a mortgagee, trustee, beneficiary, or authorized agent from filing a notice of default pursuant to Civil Code section 2924 until 30 days after contact is made with the borrower which satisfies the detailed requirements of Section 2923.5(a)(2) or until 30 days after satisfying the due diligence requirements of Section 2923.6(g). Civil Code Section 2923.5(2) **requires** the mortgagee, beneficiary, or authorized agent to contact the borrower in person or by telephone to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure, to advise the borrower of her right to request a subsequent meeting, which shall occur within 14 days of the borrowers'

request, and to provide the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency.

The Notice of Trustee's Sale ("NOS") must contain "A description of the security instrument and an identification of the parties to the instrument. (Civil Code § 2924f, subd. (b)(1)). The notice of trustee sale **must** also include, among other information, an accurate statement of the total amount of unpaid balance of the obligation secured by the real property to be sold as well as a statement of the costs, and expenses, and advances incurred at the time of the initial publication of the notice of sale. (Civil Code § 2924f(b)(1); Miller & Starr, California Real Estate (3d ed.), Deeds of Trust and Mortgages, Chapter 10 § 10.198.

Under Civil Code section 2924 et seq., a lender must properly serve and record a notice of default setting forth the borrower's breach in order to affect a foreclosure. After 90 days, three months, have elapsed, the lender must thereafter properly serve and record a Notice of Trustee Sale at last 20 days prior to the actual sale date. Assuming proper compliance with the law, the property is then auctioned to the highest bidder at a foreclosure sale.

California non-judicial foreclosure law was intended to reflect the fair balance of the respective interests of the trustors, the trustees and the beneficiaries. While the beneficiaries want an inexpensive and speedy remedy for defaults, trustors need protection against the loss of their property rights. This is particularly true since the entire foreclosure process occurs without judicial oversight.[1] The harshness of non-judicial foreclosure has been recognized. The exercise of the power of sale is a particularly harsh method of terminating and foreclosing the rights of

---

[1] Miller & Starr, California Real Estate (3d ed.), Deeds of Trust and Mortgages, Chapter 10 § 10.179; *I. E. Associates v. Safeco Title Ins. Co.* 39 Cal.3d 281 (1985).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' APPLICATION FOR TRO/OSC

the trustor.[2]

The statutory requirements are intended to protect the trustor from a wrongful or unfair loss of the property[3], and a valid foreclosure by the private power of sale requires **strict compliance** with the requirements of the statute. Miller & Starr, *California Real Estate* (3d ed.) Deeds of Trust and Mortgages, Chapter 10 § 10.179; *Anderson v. Heart Federal Sav. & Loan Assn.,* 208 Cal.App.3d 202, 211 (1989); *Miller v. Cote,* 127 Cal.App.3d 888, 894 (1982).

It has been the cornerstone of foreclosure law that the statutory requirements, intending to protect the trustor from a wrongful or unfair loss of the property, must be complied with strictly. Miller & Starr, *California Real Estate* (3d ed.) Deeds of Trust and Mortgages, Chapter 10 § 10.18. "Pursuing that policy [of judicial interpretation], the courts have fashioned rules to protect the debtor, one of them being that notice of default will be strictly construed and must correctly set forth the amounts required to cure the default." *Sweatt v. The Foreclosure Co., Inc.,* 166 Cal.App.3d 273, 278 (1985); citing to *Miller v. Cote,* 127 Cal.App.3d 888, 894 (1982).

These statutes create an absolute duty on behalf of the Defendants which **must** be satisfied before a notice of default is issued. However, as established by the declaration of Plaintiffs and the complaint herein, Defendants undeniably failed to perform any of the steps required by Section 2923.5 before they recorded the Notice of Default and issued a Notice of Trustee's Sale. Defendants also failed to comply with Section 2924, in that they recorded a Notice of Default without complying with the pre-NOD requirements of 2923.5. Defendants' failure constitutes negligence and negligence per se. Thus, Defendants should not be allowed to proceed with any foreclosure -- much less the Trustee's Sale presently set for December 22, 2009

---

[2] *Anderson v. Heart Federal Savings,* 208 Cal.App.3d 202, 215 (1989), citing *System Inv. Corporation v. Union Bank,* 21 Cal.App.3d 137, 153 (1971).

[3] *Moeller v. Lien,* 25 Cal.App.4th 822, 830 (1994); accord, *Hicks v. E.T. Legg & Associates,* 89 Cal.App.4th 496, 503 (2001); *Lo Nguyen v. Calhoun,* 105 Cal.App.4th 428, 440 (2003).

- 6 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' APPLICATION FOR TRO/OSC

- and the instant motion granted.

The same reasoning applies to a notice of trustee sale. In the case of *Anderson v. Heart Federal Savings*[4], Heart Federal Savings initiated foreclosure proceedings against Anderson due to the fact that Anderson fell behind on his payments. Heart noticed Anderson of the amount due, to include principal and interest. Heart Federal later raised its demand to $40,000. Anderson attempted to tender $25,000 which Heart Federal refused.

The appellate court set aside the resulting foreclosure sale in *Anderson v. Heart Federal Savings*. The court was deeply disturbed by the gross improprieties of the beneficiary, particularly in light of the comprehensive legislative scheme dealing with non-judicial foreclosure sales in California. (*Anderson* at 211). The Appellate Court made the following, and very pointed, observations.

> "The statutory requirements must be strictly complied with, and a trustee's sale based on statutorily deficient notice of default is invalid [Citations]" *Anderson* at 211

> "The provisions of section 2924 of the Civil Code ... must be strictly followed. [Citation]. The person relying upon the notice is bound by its provisions, and cannot insist upon any grounds of default other than those stated in that notice [Citations]"*Id.*

> "The obligation of the beneficiary to provide the trustor with accurate accounting of the amounts due to cure a default is governed by statute" *Id.*

> "A trustor is entitled to an accurate determination of the amounts actually and legally owed. This information is in the possession of the beneficiary. The trustor, borrower, is under no obligation to second-guess the amount." *Id.*

Here, in addition to Defendants failure to abide by the mandates of Section 2923.5, Defendants have also failed to abide by the mandate of Section 2924, thus rendering the NOD

---

[4] *Anderson v. Heart Federal Savings*, 208 Cal.App.3d 202(1989).

- 7 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' APPLICATION FOR TRO/OSC

fatally defective. Because the NOD is defective, the Notice of Trustee's Sale which relies upon it is also defective. Thus, both the NOD and the NOS are incapable of legal enforcement and the Trustee's Sale must be restrained and enjoined.

### 2. Plaintiffs' Rescission of the Mortgage Precludes Foreclosure

When a consumer validly rescinds a mortgage pursuant to 15 U.S.C. § 1635 the mortgage is automatically voided by operation of law. When Plaintiffs served Defendants with their rescission notice on December 18, 2009, as a matter of statutory law the trust deed mortgage became void (15 U.S.C. § 1635(b)) and Defendants became bound to immediately take the appropriate steps to reflect that fact. Regulation Z, § 226.23(d)(2). Specifically, Section 1635(b) provides, in relevant part:

When an obligor exercised his right to rescind under subsection (a):

- He is not liable for any finance or other charge, any security interest given by the obligor becomes void upon such a rescission.

- Within twenty (20) days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money or down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction

- If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligation under this section, the obligor shall tender the property to the debtor.

Plaintiffs' rescission was valid for any of the numerous reasons detailed in their complaint. Moreover, Plaintiffs' rescission was timely in that Defendants fraudulently concealed their various TILA violations, which are only now being discovered by Plaintiffs. As a consequence of the automatic voiding of the mortgage, Defendants have no basis to proceed with the

- 8 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' APPLICATION FOR TRO/OSC

scheduled trustee's sale or to take any other action to foreclose on the property. 15 U.S.C. § 1635(b); Regulation Z, § 226.23(d)(1).

## C. Equity Supports Issuance of An Injunction

The principles of equity apply to foreclosure sales. Equity does not allow one to take advantage of his own wrong nor will it assist in perpetration of fraud on another or the public. Courts can set aside a foreclosure sale when there has been fraud, when the sale has been improperly, unfairly, or unlawfully conducted, or when there has been such a mistake that it would be inequitable to let stand. See, e.g., *Bank of America Nat. Trust & Savings Ass'n v. Reidy*, 15 Cal.2d 243, 248 (1940); *Whitman v. Transtate Title Co.*, 165 Cal.App.3d 312, 322-323 (1985).

With these equitable concepts in mind, it is clear from the complaint, declarations and other documentary evidence that Defendants failed to comply with the strict requirements of Civil Code sections 2923.5 and 2924. They should not be allowed to benefit from the harsh and severe consequences that non-judicial foreclosure law permits given this failure.

Further, Defendants should not be able to benefit from their fraudulent concealment of TILA and RESPA violations.

These failures and violations of law mandate a declaration that the foreclosure process does not meet the requirements of California non-judicial foreclosure law. This foreclosure is therefore invalid. These violations further justify without question the granting of this ex parte order restraining the selling of the property and any attempts to obtain the rights of the property that belongs to Plaintiffs.

## D. The Relative Hardships Favor Plaintiffs

In this matter, the relative hardship to Plaintiffs - losing his home - represents irreparable injury, decreasing Plaintiffss' requirement of showing a probability of success on the merits.

The loss of one's property due to foreclosure constitutes an irreparable injury. *Demarest v. Quick Loan Fund, Inc.* (April 2009) West Law 940377 (C.D. Cal.); *Wrobel v. S.L. Pope & Associates*, 2007 WL 2345036 at 1 (S.D. Cal. 2007) ("Losing one's home through foreclosure is an irreparable injury."); *Bland v. Carone Family Trust*, 2007 WL 951344, at 2 (S.D. Cal.2007). Numerous courts have found this injury enough by itself to mandate preliminary injunctive relief. *See, e.g., Nichols v. Deutsche Bank Nat. Trust Co.*, 2007 WL 4181111, at 2 (S.D. Cal.2007); *United Church of Med. Ctr. v. Med Ctr. Comm'n*, 689 F.2d 693, 701 (7th Cir.1982; *Johnson v. U.S. Dept. of Agriculture, supra*, at 789.

If Defendants are allowed to foreclose, Plaintiffs will lose their family home. A harsher outcome could scarcely be imagined, particularly 3 days before Christmas. The balance of harms clearly weighs in Plaintiffs' favor, both as a matter of law and of common decency.

In contrast, Defendants suffer nothing by preserving the status quo and allowing Plaintiffs to remain in their home until this matter is determined on the merits. Indeed, inasmuch as the home will be occupied and maintained by Plaintiffs, its value will be preserved by allowing them to remain living there. In contrast, if the Plaintiffs' property is foreclosed upon and left vacant – as thousands of other properties are in our community – it will likely fall into disrepair and decline in value. Defendants thus not only suffer no harm by issuing the order sought, they actually benefit from it.

**E. No Bond Should be Required**

District courts have broad discretion in determining the amount of a bond. *See Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir.2003). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassidy*, 320 F.3d 906, 919 (9th Cir.2003).

- 10 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' APPLICATION FOR TRO/OSC

Here, there is no realistic harm to Defendants from a restraint of the foreclosure proceedings and trustee's sale. If the Defendants' position that the loans were valid is correct, then the loans are adequately secured by the very property in question; additional security if neither appropriate nor warranted. *Phleger v. Countrywide Home Loans, Inc.*, 2007 WL 4105672 at 6 (N.D. Cal. 2007).

## III.

## CONCLUSION

For all the foregoing reasons, as well as those set forth in the papers and supporting documents submitted herewith and in Plaintiffs' complaint, Plaintiffs pray this Court grant the requested temporary restraining order and order to show cause and set the matter for a hearing for a preliminary injunction pending trial.

Dated: December 21, 2009

_____
Stephen C. Ruehmann
Attorney for Plaintiffs